[No. 16203–9–I. Division One. March 25, 1987.]

VITA KORTE, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for appellant State.

*Ellsworth S. Wetzel, Scott Stafne,* and *Stafne & Wetzel,* for appellant Union.

*Kelby Fletcher* and *Peterson, Bracelin, Young, Putra, Fletcher & Zeder,* for respondent.

SCHOLFIELD, C.J.—The Department of Employment Security appeals the trial court's reinstatement of unemployment compensation benefits to Vita Korte. We reverse.

## FACTS

Korte was employed by Local 19 of the International Longshoremen and Warehousemen's Union in 1979 as a bookkeeper and executive secretary, with no written employment contract. Disagreements arose from time to time regarding Korte's rights as an employee. In 1983, the union decided that a negotiated written contract was needed. Union officials met with Korte, and copies of sample employment contracts were studied. Negotiations were conducted with Korte, but no agreement was reached. Although Korte was a member of ILWU Local 9, that Local did not represent her in any of these negotiations with Local 19.

The union executive board ultimately drew up a contract, which was presented to Korte as nonnegotiable and a con-

dition of continued employment. She was given 72 hours in which to accept or reject the contract. On August 22, 1983, the last day of the 72–hour period, Korte was asked to sign the contract, but she refused and asked to continue negotiations.

The secretary–treasurer of the union told her that if she did not sign the contract, she should leave her keys on her desk at 4 o'clock that afternoon. Korte failed to sign the contract and turned in her keys at the end of that workday.

The proposed contract included terms which Korte contends were substantial changes from her previous employment conditions. She previously worked a 35–hour week. The proposed contract provided that a day's work could be less than a full 8 hours (with a 1–hour lunch break), at the discretion of the secretary–treasurer. A reduction in work hours could be significant because Korte was paid at an hourly rate.

The proposed contract provided for an immediate raise from $13.32 per hour to $13.58 per hour. However, the pay rate would then be frozen until $13.58 equaled 80 percent of the basic longshoremen's hourly straight time rate. Increases thereafter would be given so that the office staff pay rate would remain at 80 percent of the basic longshoremen's rate. In the past, the office staff, which included Korte, was voted a dollar–for–dollar increase each time the union members received a raise. When Korte's employment terminated, her wages were only 20 cents per hour less than the basic longshoremen's rate.

Although Korte was receiving 3 weeks of paid vacation per year, the proposed contract provided for only 2 weeks' vacation until an employee had worked for 10 years. The contract would have been effective from September 1, 1983, until September 1, 1986. The contract entitled Korte to her regular 3 weeks of vacation in 1983. At the time of her termination, she had worked for Local 19 for approximately 4½ years.

The proposed contract required medical evidence of illness to qualify for paid sick leave. Korte testified this had

not been required in the past. In 1982, Korte had been granted unpaid maternity leave, but the contract did not mention maternity leave, and the executive board minutes of August 16, 1983, showed that the provision for maternity leave was intentionally deleted from the contract. The proposed contract did provide for leaves of absence at the discretion of the secretary–treasurer.

Korte also contends that the grievance procedures provided by section 7 of the proposed contract gave the union the right to institute a grievance against her, but did not give her the right to institute a grievance procedure against the union. Section 7 provides, in part:

> The purpose of this section is to investigate and adjudicate any complaint against the office staff under the terms of this agreement[.] ILWU Local 19 may institute a grievance against any employees whose conduct on the job causes disruption of normal harmony in the relationship of the parties hereto or who fails to perform his or her job properly.
>
> In the event the Secretary–Treasurer and/or the President of ILWU Local 19 and the office staff fail to agree on any grievance question placed before it, such question shall be immediately referred at the request of either party to the Trustees of ILWU Local 19 for decision.

Korte filed a claim for unemployment compensation that was denied by the Department. She appealed the decision, and a hearing was held before an administrative law judge (ALJ) on November 2, 1983. The ALJ set aside the denial of benefits, determining that Korte left her employment for good cause because the manner in which ILWU Local 19 refused to continue negotiations and demanded a signature or termination of employment was unreasonable. The ALJ concluded that Korte left her work for nondisqualifying reasons.

Local 19 appealed the ALJ's decision, and the Commissioner set aside that decision and determined that Korte was disqualified from obtaining benefits. The Commissioner adopted the ALJ's findings of fact but disagreed with his conclusions of law. The Commissioner concluded that the

proposed agreement did not provide such a change in working conditions as to give Korte a good cause for "summarily abandoning her employment." The Commissioner held that the reasonable thing for Korte to have done was to continue in her employment and grieve any unsatisfactory working conditions when and if they arose following execution of the agreement. The Superior Court reversed the Commissioner, relying primarily on the absence of a grievance procedure available to employees.

### STANDARD OF REVIEW

Cases involving mixed questions of law and fact are reviewed under the error of law standard. A mixed question of law and fact exists when there is a dispute both as to the inferences drawn from the raw facts and the meaning of a statutory term. *Vergeyle v. Department of Empl. Sec.,* 28 Wn. App. 399, 623 P.2d 736 (1981).

In reviewing an agency's decision involving a mixed question of law and fact, the court determines the law independently and applies it to the facts as found by the agency unless the findings are clearly erroneous. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 441, 680 P.2d 40 (1984). The agency's interpretations of the law which it is charged with carrying out will be given substantial weight by a reviewing court. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n, supra.*

Thus, the appropriate standard of review for this case is the error of law standard. Because no error has been assigned to the ALJ's findings of fact, these findings are not in dispute. We proceed to independently determine the law and apply it directly to those facts as found by the ALJ, although consideration must be given to the Department's expertise. Review by the trial court and our review is limited to the record made in the administrative proceedings. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983); *Standow v. Spokane,* 88 Wn.2d 624, 637, 564 P.2d 1145, *appeal dismissed,* 434 U.S. 992 (1977).

VOLUNTARY TERMINATION FOR GOOD CAUSE

RCW 50.20.050(1) disqualifies a person from receiving benefits if he or she left work voluntarily without good cause.

■ The first issue presented here is whether Korte was discharged or left her job voluntarily. The parties have argued this issue extensively. We have concluded on the entire record that Korte left her employment voluntarily. Whether a worker voluntarily left or was discharged must be resolved on a basis of the worker's intent. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392–93, 687 P.2d 195 (1984); *Vergeyle v. Department of Empl. Sec., supra* at 402. Korte could have continued in her employment. The union was willing to retain her as an employee subject to a condition. Korte intentionally rejected the condition and voluntarily left the job.

This leaves for decision the issue of whether her voluntary termination was with good cause. The facts being virtually undisputed, this issue must be decided as an issue of law, that is, proper application of the law to established facts. In making this decision, we must accord substantial weight to the Commissioner's decision. *Safeco Ins. Cos. v. Meyering, supra*. RCW 50.32.150 makes the Commissioner's decision prima facie correct.

"Good cause" is defined in RCW 50.20.050, which provides in pertinent part:

> (3) In determining under this section whether an individual has left work voluntarily without good cause, the commissioner shall only consider work–connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies. . . .

Additional definitions are provided in WAC 192–16–009 as follows:

> (1) . . . [I]n order for an individual to establish good cause within the meaning of RCW 50.20.050(1) for leav-

ing work voluntarily it must be satisfactorily demonstrated:

(a) That he or she left work primarily because of a work connected factor(s); and

(b) That said work connected factor(s) was (were) of such a compelling nature as to cause a reasonably prudent person to leave his or her employment; and

(c) That he or she first exhausted all reasonable alternatives prior to termination: *Provided,* That the individual asserting "good cause" may establish in certain instances that pursuit of the otherwise reasonable alternatives would have been a futile act, thereby excusing the failure to exhaust such reasonable alternatives.

██ It is apparent from the foregoing definitions that good cause must be based upon existing facts as contrasted to conjecture, and that reasons for leaving employment must be significant. Here, many of Korte's objections to the proposed contract are conjectural. The contract provided that a workweek could consist of 35 hours or less. Korte had been working regularly 35 hours per week. The mere fact that the employer has the authority to reduce a workweek to less than 35 hours does not mean that such a reduction is actually going to occur, nor that if such a reduction did occur it would be great enough to prove significant to the employee. The contract provision regarding the 35–hour workweek had no immediate effect whatsoever upon Korte's employment. Furthermore, she had been working under an oral contract of employment that contained no guaranty of the 35–hour week. The contract gave the union no power with respect to the length of the workweek that it did not possess at all times during Korte's employment.

Korte's objection to the contract's failure to mention maternity leave is also conjectural and would remain so until such time as Korte needed and requested maternity leave and was refused. Here again, she had worked for 4½ years for the same employer without having a *guaranty* of maternity leave. The fact that she had on one occasion requested and been granted some maternity leave did not

have the legal effect of placing the union in a position where it was contractually disabled from denying a future request for maternity leave. Furthermore, Korte has rights under both federal and state law with respect to maternity leave. *See* RCW 49.60.010, .180; WAC 162–30–020.

Korte's complaint regarding the grievance procedure set forth in the proposed contract also fails to present any current substantial impact upon her conditions of employment. Nothing in the contract would prevent her from presenting complaints regarding her working conditions to the secretary–treasurer, the board of trustees, or the president of Local 19. She could also ask for assistance from her own Local 9.

Furthermore, the language of section 7 gives her the right, once an issue is raised, to refer the question to the trustees, and if not satisfied with the decision of the trustees, to refer the question to the area arbitrator for hearing and decision. Since Korte had no contractual grievance procedure under her existing employment, it is difficult to see how the provisions of section 7 could amount to a work factor compelling enough to cause a reasonable person to quit.

Any harm resulting from the change n the method of calculating Korte's future pay raises was conjectural as well. Initially, she was to receive a raise under the contract. Although she would not have received additional increases each time the longshoremen's base pay increased, it is quite possible that the longshoremen would receive no raise during the term of Korte's contract, or raises of only minimal amounts. Thus, Korte cannot claim sufficient harm to enable her to claim that a reasonably prudent person would have left the employment.

Under the terms of the proposed contract, Korte's paid vacation would be reduced from 3 weeks to 2 weeks until she had been employed for 10 years. She had been enjoying 3 weeks of annual vacation, so this represents a material change. The Commissioner's written decision did not comment on this factor. However, we concur with the general

tenor of the Commissioner's decision and find that the loss of 1 week per year of paid vacation under a 3–year contract is not a factor of such a compelling nature to justify a reasonably prudent person's leaving regular employment that was otherwise satisfactory.

Additionally, Korte has failed to show that she first exhausted all reasonable alternatives. She had the option to sign the contract, continue working and evaluate actual changes in working conditions as they occurred.

Thus, we hold that Korte voluntarily left work without good cause pursuant to RCW 50.20.050. The Superior Court judgment is reversed, and the Commissioner's decision denying benefits is reinstated.

WILLIAMS and GROSSE, JJ., concur.