[No. 37356-1-I. Division One. December 23, 1996.]

NOREEN A. ROBINSON, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*William B. Knowles* and *Matthew J. Bean*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Winslow Whitman, Assistant*; and *Pamela Jo Crone* of *Unemployment Law Project*, for respondent.

COLEMAN, J. — Noreen Robinson quit her job as an escrow agent because she feared that continued employment would jeopardize her professional license. The court below ruled that Robinson was disqualified from unemployment compensation benefits under RCW 50.20.050. We reverse because Robinson has established that she quit for good cause after exhausting all reasonable alternatives.

Robinson worked for Classic Escrow Services as their designated escrow officer from December 6, 1993, until July 13, 1994. Her primary responsibility was to close real estate transactions for mortgage brokers. In addition, Robinson drafted closing documents as a limited practice officer (LPO). LPO's must be licensed through the Washington Supreme Court pursuant to APR 12.

Classic Escrow is owned by Arleen Zehm and her husband, David Zehm. Almost all of Classic Escrow's business was obtained through Home Lending Mortgage Associates, which is solely owned by David Zehm. Under RCW 19.146.200(1), Home Lending was required to obtain a mortgage broker's license. Although Home Lending applied for a license on June 2, 1994, it withdrew the application before it was approved. Home Lending continued to solicit and originate residential mortgages despite warnings from the Department of Financial Institutions that this activity by a nonlicensed broker violated state law.

On June 12, 1994, Robinson learned that a lender had refused to fund one of her loans because Home Lending was not licensed. Robinson called the Department of

Financial Institutions' Consumer Affairs Division (DFI). A DFI employee told Robinson that on June 2, 1994, the DFI had issued a cease and desist order against Home Lending. Robinson then called the Escrow Division of the Department of Licensing and was advised that she could be personally liable for processing Home Lending's loans. These statements led Robinson to believe that her license would be in jeopardy if she continued to close any Home Lending mortgages. Contrary to information received from the DFI employee, although the DFI had sent a warning letter to Home Lending, no formal cease and desist order had actually been issued at that time.

That afternoon, Robinson met with Arleen Zehm and Home Lending's attorney, Graham Bell. Robinson expressed her fear that processing Home Lending's illegally originated mortgages could jeopardize her license and career. Bell stated that the chances of Robinson being personally liable were remote. He also said that Home Lending's difficulties were not her concern and told Robinson to do her job. The parties scheduled another meeting for the next day.

On June 13, 1994, Robinson resigned, stating in a letter that she saw "no way we can change or correct this situation." She did not attend the meeting scheduled for that afternoon. On August 24, 1994, the DFI issued a formal cease and desist order against Home Lending.

Robinson claimed entitlement to unemployment compensation. The Administrative Law Judge (ALJ) denied Robinson's benefits, ruling that Robinson had failed to establish good cause to quit her job. The Commissioner's Delegate and the Superior Court affirmed this decision.

■ An agency's decision is deemed prima facie correct, and a party assigning error must prove that the decision was clearly erroneous. RCW 50.32.150; *Schuffenhauer v. Department of Employment Sec.*, 86 Wn.2d 233, 235, 543 P.2d 343 (1975). Robinson challenges the finding that there was no cease and desist order until August 24, 1994. While the DFI sent letters to Home Lending generally advising

them that originating and soliciting loans while unlicensed would violate State law, the record fails to reveal that any formal cease and desist order was issued before August 24. Although DFI personnel informed Robinson otherwise, Robinson offered no proof of an earlier order. This finding is not clearly erroneous.

██ The fact that the DFI had not issued a cease and desist order when Robinson quit, however, is not material. Robinson justifiably relied on the state agency's statements that further employment with Classic Escrow might jeopardize her interests. We hold that the DFI's representations gave Robinson "good cause" to resign.

██ The Employment Security Act is to be liberally construed "for the purpose of reducing involuntary unemployment[.]" RCW 50.01.010. An individual who leaves work voluntarily is disqualified from receiving unemployment benefits, unless she has good cause to quit. RCW 50.20.050(1). Generally, good cause is judged by what an ordinarily prudent person would have done under the circumstances faced by a claimant. *Vergeyle v. Employment Sec. Dep't*, 28 Wn. App. 399, 403, 623 P.2d 736, *review denied*, 95 Wn.2d 1021 (1981), *overruled on other grounds*, *Davis v. Employment Sec. Dep't*, 108 Wn.2d 272, 737 P.2d 1262 (1987). This issue presents a mixed question of law and fact because the parties dispute both the inferences drawn from the facts and the statutory meaning of "good cause." Thus, we review the ALJ's decision for error of law. *Korte v. Employment Sec. Dep't*, 47 Wn. App. 296, 300, 734 P.2d 939 (1987).

The ALJ ruled against Robinson because she failed to show that continuing her employment would "likely" have subjected her to personal liability or loss of her license. In determining good cause, "the commissioner shall only consider work-connected factors such as the degree of risk involved to the individual's health, safety, and morals[.]" RCW 50.20.050(3). An employee need not suffer actual harm to qualify for unemployment compensation after leaving a job; a reasonable apprehension of future harm is

sufficient to constitute good cause under the Employment Security Act. *Coleman v. Employment Sec. Dep't*, 25 Wn. App. 405, 408, 607 P.2d 1231 (1980); *Hussa v. Employment Sec. Dep't*, 34 Wn. App. 857, 863-64, 664 P.2d 1286 (1983). Although Robinson may not have shown that future harm would have been "likely," the ALJ erroneously applied this standard. The proper test is what a reasonably prudent person would do in similar circumstances.

The Employment Security Department (ESD) is correct that good cause is determined based on existing facts rather than conjecture. *Korte*, 47 Wn. App. at 302. It argues that because no formal cease and desist order was issued until after Robinson quit her job, there was no reasonable basis for Robinson's fear of liability or harm in processing Home Lending's mortgages. It also claims that even if the DFI had issued a cease and desist order against Home Lending, it would have had no effect on Classic Escrow.

Robinson's fear of liability or loss of license, however, was based on more than conjecture. Two State agencies informed her that closing mortgages from Home Lending could jeopardize her interests. Home Lending's attorney admitted that Robinson could be liable for closing Home Lending's loans. We reject the ESD's suggestion that Robinson needed to obtain a written statement from the DFI or hire an attorney for advice. A reasonable person in Robinson's position would justifiably fear that continued employment at Classic Escrow might result in the loss of her license or personal liability. Robinson's objectively reasonable apprehension of harm gave her good cause to leave her job under the Employment Security Act.

This conclusion, however, does not end our inquiry. Generally, an individual who voluntarily quits a job for good cause is eligible for unemployment benefits only if all reasonable alternatives are exhausted before quitting. *Hussa*, 34 Wn. App. at 862-63; WAC 192-16-009(1)(c). The individual is excused from this exhaustion requirement if it is established that to do so would have been a futile act.

WAC 192-16-009(1)(c). Whether a claimant exhausted all reasonable alternatives is a question of fact, which we review under the clearly erroneous standard. *Forsman v. Employment Sec. Dep't,* 59 Wn. App. 76, 83, 795 P.2d 1184 (1990), *review denied,* 116 Wn.2d 1005 (1991).

We reverse the ALJ's ruling that Robinson failed to exhaust all reasonable efforts to preserve her employment. While Robinson quit her job without attending the meeting scheduled for July 13, 1994, her attendance would have been a futile act. Zehm testified before the ALJ that the purpose of the second meeting was to discuss personal issues that were unrelated to Home Lending's situation. During the July 12 meeting, Bell and Zehm told Robinson to ignore Home Lending's situation and do her job. There is no evidence that Bell or Zehm were willing to further consider Robinson's concerns about her license and personal liability. Robinson was given no reason to believe that she could avoid processing Home Lending's mortgages while her concerns were investigated further. After being unequivocally told that her supervisor was not going to address Robinson's concerns, it would have been futile to pursue any alternative to quitting.

We reverse and hold that Robinson is qualified for unemployment compensation benefits. She is also entitled to an award of reasonable attorney fees on appeal under RCW 50.32.160.

KENNEDY, A.C.J., and ELLINGTON, J., concur.