

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 FEB -3 AM 8: 47

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WANDA BUNCH, on behalf of herself and others similarly situated, | ) ) ) | No. 69600-9-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY; and DEPOSITORS INSURANCE COMPANY, | ) ) ) | UNPUBLISHED |
| | ) | FILED: February 3, 2014 |
| Appellants. | ) ) ) | |

Cox, J. — The priority of action doctrine generally requires that the forum that first gains jurisdiction over a matter retains exclusive authority over it.[1] Here, the U.S. District Court for the Western District of Washington gained jurisdiction over the Consumer Protection Act ("CPA"), chapter 19.86 RCW, claim by Wanda Bunch against Nationwide Mutual Insurance Company and Depositors Insurance Company (collectively "Nationwide"). That federal court dismissed without prejudice only the request for CPA injunctive relief. Thereafter, Bunch filed this second state action, seeking CPA injunctive relief. Because the trial court did not properly exercise its discretion by denying Nationwide's motion to stay this action

---

[1] State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 111 Wn. App. 586, 606, 49 P.3d 894 (2002) (citing City of Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469, 117 Wn.2d 655, 675, 818 P.2d 1076 (1991); Sherwin v. Arveson, 96 Wn.2d 77, 80, 633 P.2d 1335 (1981)), review denied, 148 Wn.2d 1020 (2003).

on the basis of the priority of action doctrine, we reverse and remand with instructions.

In 2011, Bunch's tenant told her that there was water damage in Bunch's house. At the time, Bunch had homeowner's insurance with Nationwide. It denied her insurance claim for this water damage.

In 2012, Bunch commenced a putative class action against Nationwide in state court. She asserted, among other claims, that Nationwide violated the CPA by relying on ambiguous language in its homeowner's insurance policies to deny coverage to her and other policyholders. She requested injunctive and other equitable relief along with actual and treble damages.

Nationwide removed the action to federal district court. The court concluded that it lacked "Article III jurisdiction" with respect to Bunch's request for CPA injunctive relief. It dismissed the "CPA injunction claim" without prejudice. It appears this decision was based on the fact that Bunch was no longer a policy holder. The federal district court retained jurisdiction to decide whether liability exists under the CPA and to determine what relief, other than injunctive relief, is warranted if liability exists.

One day after the district court dismissed the request for CPA injunctive relief, Bunch commenced this second action against Nationwide in superior court. She asserted a request for CPA injunctive relief based on the same factual allegations stated in her complaint in her first action.

Nationwide moved to stay these proceedings, pending the resolution of the CPA claim in federal district court. It argued that a stay was necessary under

the priority of action doctrine because the actions in state and federal court had identical subject matter, parties, and relief.

The court denied Nationwide's motion. We granted discretionary review.

**PRIORITY OF ACTION**

Nationwide argues that the trial court abused its discretion when it denied the motion to stay proceedings in state court pending the outcome of proceedings in federal court. Specifically, it argues that the priority of action doctrine requires a stay in this case. We agree.

This court generally reviews a lower court's determination on a motion to stay proceedings for abuse of discretion.[2] But a decision denying such a motion based on the priority of action doctrine is a legal determination that we review de novo.[3]

Under the priority of action doctrine, "'the court which first gains jurisdiction of a cause retains the exclusive authority to deal with the action until the controversy is resolved.'"[4] This rule applies where two actions share "identity"[5] of certain elements. Generally, courts look to whether the actions share identity of (1) subject matter, (2) parties, and (3) relief.[6]

---

[2] King v. Olympic Pipeline Co., 104 Wn. App. 338, 348, 16 P.3d 45 (2000).

[3] Evergreen Freedom Found., 111 Wn. App. at 605.

[4] City of Yakima, 117 Wn.2d at 675 (quoting Sherwin, 96 Wn.2d at 80).

[5] Id.

[6] Id. (citing Sherwin, 96 Wn.2d at 80).

While the general rule looks to these three elements, these elements are not to be applied inflexibly.[7] Rather, courts have looked beyond these elements and to the policy behind the doctrine.[8] This was seen in State ex rel. Evergreen Freedom Foundation v. Washington Education Ass'n, where Division Two of this court stated that the underlying purpose of the three elements is to determine whether the "identity" of the actions is "such that a decision in one tribunal would bar proceedings in the other tribunal because of res judicata."[9]

In Evergreen Freedom Foundation, the foundation argued that the priority of action doctrine did not apply to bar its claim in superior court.[10] There, the foundation pursued its claims administratively but also sought to bring these claims in superior court.[11] The trial court denied the foundation's motion to amend its complaint to include allegations made to the agency because the allegations would violate the priority of action rule.[12]

On appeal, Division Two agreed with the trial court.[13] Division Two explained that it was undisputed that the first two elements were identical— the

---

[7] Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank, 115 Wn.2d 307, 321, 796 P.2d 1276 (1990).

[8] See, e.g., id.; Evergreen Freedom Found., 111 Wn. App. at 607.

[9] 111 Wn. App. 586, 607, 49 P.3d 894 (2002) (citing City of Yakima, 117 Wn.2d at 675)).

[10] Id. at 606-09.

[11] Id. at 595-96.

[12] Id.

[13] Id. at 609.

subject matter and parties.[14] Thus, the issue was whether the third element, identity of relief, was met.[15] The foundation argued that there was not an identity of relief because the administrative agency could only levy fines up to $2,500 while the court could "levy fines far in excess of that amount."[16]

In determining that there was identity of relief, the court relied on "the policy behind the priority of action doctrine, the ability to apply res judicata to a later action in superior court."[17] The court concluded that the elements of res judicata were met, and the priority of action rule applied.[18]

The generic term "res judicata" may include both res judicata or claim preclusion *and* collateral estoppel or issue preclusion.[19] Because "res judicata" is a general term, a court may look to both claim and issue preclusion to determine whether there is an "identity" of the actions.[20]

---

[14] Id. at 607.

[15] Id.

[16] Id.

[17] Id.

[18] Id. at 607-09.

[19] See 9 DAVID E. BRESKIN, WASHINGTON PRACTICE: CIVIL PROCEDURE FORMS AND COMMENTARY § 8.79 (3d ed. 2013) ("The general term res judicata encompasses claim preclusion (often itself called res judicata) and issue preclusion also known as collateral estoppel.").

[20] See, e.g., Evergreen Freedom Found., 111 Wn. App. at 607 (looking to the elements of res judicata to determine whether the priority of action doctrine should apply).

"Res judicata [or claim preclusion] precludes a later lawsuit when the second lawsuit has identical subject matter, cause of action, persons and parties, and the quality of the persons for or against whom the claim is made."[21]

Collateral estoppel or issue preclusion precludes relitigation of an issue in a subsequent proceeding where the following elements are met: "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of issue preclusion does not work an injustice on the party against whom it is applied."[22]

"Broadly stated, preclusion rules developed under the rubric of res judicata and collateral estoppel are designed to prevent repetitive litigation of the same matters."[23] Similarly, the priority of action doctrine prevents a court from interfering with the authority of another court of competent jurisdiction.[24] It prevents "'unseemly, expensive, and dangerous conflicts of jurisdiction and of process.'"[25]

---

[21] Id.

[22] Ullery v. Fulleton, 162 Wn. App. 596, 602, 256 P.3d 406, review denied, 173 Wn.2d 1003 (2011).

[23] 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.21 (2d ed. 2013).

[24] Am. Mobile Homes of Wash., 115 Wn.2d at 316-17.

[25] Id. (quoting Sherwin, 96 Wn.2d at 80).

Here, it is undisputed that the actions in federal court and state court have identical parties, Bunch and Nationwide, and identical subject matter, the CPA. The dispute centers on whether there is an identify of relief sought in each court. In federal court, Bunch seeks damages for the alleged CPA violation. In state court, she seeks injunctive relief for the alleged CPA violation. Thus, the issue is whether this disparity of relief does not necessarily preclude application of the priority of action doctrine to stay Bunch's state court action.[26]

Because the state and federal actions are both predicated on the same alleged CPA violation, we look to collateral estoppel or issue preclusion principles to determine whether the priority of action doctrine applies.

The claim in both actions was brought pursuant to RCW 19.86.090, the CPA's citizen suit provision. This statute provides that "'[a]ny person who is injured in his or her business or property' by a violation of the act may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages."[27] "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."[28] The "injury" element of a CPA claim is distinct from "damages" or

---

[26] See Evergreen Freedom Found., 111 Wn. App. at 607 (concluding that the priority of action doctrine applied despite a "disparity" in the type of relief available in two separate actions).

[27] Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (alteration in original) (quoting RCW 19.86.090).

[28] Id. (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).

7

other types of remedies.[29] A plaintiff must first establish a CPA violation before a court may order any CPA remedies.[30]

Here, while it is clear that Bunch's first and second complaints do not seek identical relief, their allegations related to the CPA violation are identical. Bunch asserted in her first action, which Nationwide removed to federal court, that Nationwide violated the CPA:

> In all instances, Nationwide engaged in the same pattern of unfair and deceptive conduct pursuant to a common insurance policy and interpretation thereof. Nationwide's acts were and are unfair and deceptive acts or practices in trade and commerce that affect the public interest. Bunch and Class members were directly and proximately injured by Nationwide's conduct.[31]

Bunch then claimed that she was entitled to the following relief: (1) "injunctive relief requested herein under RCW 19.86.090"; (2) "other declaratory and equitable relief (e.g., restitution and disgorgement) requested herein as may be necessary to restore to any person in interest, any money which may have been acquired by means of unfair practices"; and (3) "statutory actual and treble damages and other relief, such as attorneys' fees and costs."[32] The federal court

---

[29] Id. at 58.

[30] See RCW 19.86.090; see also 16 DAVID K. DEWOLF, WASHINGTON PRACTICE: CONSUMER PROTECTION ACT REMEDIES § 8.10 (3d ed. 2013) ("*Upon proof of a violation of the CPA*, the plaintiff may receive remedies including actual damages, treble damages (up to a maximum of $25,000), attorney's fees, and statutory costs. . . . In addition to the recovery of damages, a plaintiff may also ask the court to enjoin future violations.") (emphasis added).

[31] Clerk's Papers at 33.

[32] Id. at 33-34.

dismissed the first of these, the request for CPA injunctive relief, without prejudice.

Following this dismissal, Bunch commenced this action. She again asserted that Nationwide violated the CPA using almost identical language from her first action. But in this action she only claimed that she was entitled to "injunctive relief requested herein under RCW 19.86.090."[33]

Before either court may grant Bunch relief, one of the two must first decide whether Nationwide violated the CPA and is liable.[34] Accordingly, under collateral estoppel principles, that court's determination of liability will bar relitigation of this issue in the other court, assuming that the other collateral estoppel requirements are met.

Even Bunch agrees with this conclusion: "Bunch agrees that if either court determined *an issue* relevant in both actions (such as whether Nationwide engaged in an unfair or deceptive act or practice), the determination would have *collateral estoppel* effect in the other action."[35] Thus, the two actions share an "identity" such that the priority of action doctrine should apply.[36]

Because the federal court first gained jurisdiction of the issue whether Nationwide violated the CPA, under the priority of action doctrine, it retains the

---

[33] Id. at 7.

[34] See RCW 19.86.090.

[35] Respondent's Brief at 16 (first emphasis added).

[36] See Evergreen Freedom Found., 111 Wn. App. at 607.

exclusive authority to determine this issue.[37] Thus, the policy underlying this doctrine requires that proceedings in this second action be stayed pending (a) the determination that such violation caused injury to Bunch's business or property, and (b) the determination of liability.[38] Like Evergreen Freedom Foundation, this outcome serves the priority of action doctrine's purpose.[39] This outcome prevents "'unseemly, expensive, and dangerous conflicts of jurisdiction and of process.'"[40]

Bunch makes a number of arguments that the priority of action doctrine does not apply in this case. None are persuasive.

Bunch argues that the two actions' request for relief do not have the potential for "overlap." Nevertheless, this characterization does not preclude application of the doctrine.

She contends that the "federal court has ruled [that] it is **prohibited** from granting the relief that Bunch seeks in state court." While the federal court concluded that it lacked "Article III jurisdiction" with respect to injunctive relief under the CPA, it retained jurisdiction over the remaining parts of her CPA claim, including the determination of Nationwide's liability. As discussed previously in

---

[37] City of Yakima, 117 Wn.2d at 675.

[38] Panag, 166 Wn.2d at 37.

[39] See Evergreen Freedom Foundation, 111 Wn. App. at 607.

[40] Am. Mobile Homes of Wash., 115 Wn.2d at 317 (quoting Sherwin, 96 Wn.2d at 80).

this opinion, whether Nationwide violated the CPA is the threshold issue common to both actions. Thus, the priority of action doctrine controls here.

Even if the two actions overlap to some extent, Bunch also asserts that there is "no general rule that two actions cannot proceed simultaneously merely because of an overlap, even a close one, in issues." She cites Trust Fund Services v. Heyman and Travelers Indemnity Co. v. Madonna to support this assertion.[41] But those cases are not helpful because they do not address the priority of action doctrine, which prevents two actions with the requisite identities from proceeding simultaneously.

Bunch argues that the priority of action doctrine does not apply because the federal court is "incompetent" to hear Bunch's injunction claim.[42] She cites Evergreen Freedom Foundation to argue that the priority of action doctrine does not apply because of this "incompetency."[43]

There, Division Two of this court explained that agencies are "institutionally incompetent to hear all claims."[44] Thus, it explained that "a party should not be precluded from bringing a lawsuit in a court of general jurisdiction for a hearing of claims excluded at the agency level."[45] On this point, Evergreen

---

[41] Brief of Respondent at 9 (citing Trust Fund Servs. v. Heyman, 15 Wn. App. 452, 454-55, 550 P.2d 547 (1976); Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990)).

[42] Id. at 10-11.

[43] Id. (citing Evergreen Freedom Found., 111 Wn. App. at 608).

[44] Evergreen Freedom Found., 111 Wn. App. at 608.

[45] Id.

Freedom Foundation is distinguishable because it addressed the competency of an agency, which is not at issue here.[46] Moreover, Division Two concluded that the agency's incompetency in that case was not at issue because the agency was "competent to adjudicate" the relevant issue.[47] Similarly, the federal court in this case is "competent" to determine whether Nationwide violated the CPA.[48] The basis on which it dismissed the injunction claim was that it could not address that form of relief. In sum, this argument is not persuasive.

Bunch argues that Nationwide "pivots" or wrongly focuses its analysis on res judicata and collateral estoppel on appeal. Not so.

As discussed previously in this opinion, whether the priority of action rule applies is dependent on whether two actions share the same identity "'such that a final adjudication of the case by the court in which it first became pending would, as res judicata, be a bar to further proceedings in a court of concurrent jurisdiction.'"[49] Consequently, this issue *requires* consideration of res judicata principles, which can include collateral estoppel.[50]

Bunch contends that the federal action cannot bar her CPA injunction request in state court based on res judicata or claim preclusion. But, as

---

[46] Id.

[47] Id.

[48] See, e.g., Steele v. Extendicare Health Servs., Inc., 607 F. Supp. 2d 1226, 1230-34 (W.D. Wash. 2009).

[49] Am. Mobile Homes of Wash., 115 Wn.2d at 320 (quoting Sherwin, 96 Wn.2d at 80).

[50] See 9 BRESKIN, supra, at § 8.79.

discussed previously, collateral estoppel or issue preclusion more aptly applies to this case. Under collateral estoppel, the federal action could bar the issue of whether there was a CPA violation in the state action. This argument is not helpful.

Bunch asserts that "no Washington court has ever held that the mere possibility that collateral estoppel could apply as to some issues means that a court must stay an action." "This test would be inconsistent with the test for the priority-of-action [doctrine] on its face. The priority-of-action [doctrine] requires 'identity' of relief. Collateral estoppel clearly does not." But Bunch's argument is based on too narrow of a reading of this doctrine's requirements and ignores the policy underlying this doctrine.

Courts have generally looked at identity of subject matter, parties, and relief.[51] But, as discussed previously, courts have also looked beyond these three elements.[52] The doctrine is not to be applied inflexibly.

The policy supporting the priority of action doctrine and collateral estoppel are similar—preventing repetitive litigation.[53] Thus, Bunch's argument to the contrary is not persuasive.

Finally, Bunch argues this court should not disturb the trial court's discretion. She raises a number of equitable considerations to argue that the

---

[51] Am. Mobile Homes of Wash., 115 Wn.2d at 320; Sherwin, 96 Wn.2d at 80.

[52] Evergreen Freedom Found., 111 Wn. App. at 607.

[53] See 14A TEGLAND, supra, at § 35.21; Am. Mobile Homes of Wash., 115 Wn.2d at 317.

priority of action should not apply in this case. But our review of the court's decision is de novo because the priority of action rule, a legal doctrine, underlies the trial court's decision. Thus, we need not defer, in this case, to the trial court's general broad exercise of discretion.

In any event, Bunch's equitable arguments in support of the trial court's exercise of discretion in this case do not weigh in her favor.[54]

First, Bunch asserts that different standards for class certification exist for her damages claim in federal court than her injunction claim in state court. She contends that the state court was "entitled to conclude that there is no good reason why Bunch should have to spend years trying to prove actual damages in the federal courts and meet a higher class certification standard, when she would be entitled to a quicker remedy, subject to a lesser burden of proof, and a lower class certification standard, in state court." These arguments are not persuasive.

To begin with, Bunch does not have to wait until the federal court determines damages to pursue injunctive relief in state court. Bunch may pursue this relief if the federal court determines that Nationwide violated the CPA. Additionally, Bunch fails to explain how a different class certification standard would make the issue of whether Nationwide violated the CPA in the state and federal actions any different.

Second, Bunch argues that "there is no risk of wasting judicial resources or arriving at inconsistent results." But if two courts are simultaneously considering the same issue—whether Nationwide violated the CPA—there is a

---

[54] See Am. Mobile Homes of Wash., 115 Wn.2d at 321.

risk of the two courts arriving at inconsistent results. This would also be a waste of judicial resources.

We reverse the order denying Nationwide's motion to stay. We remand with instructions for the court to stay these proceedings until such time as the federal district court determines (a) that a CPA violation caused injury to Bunch's business or property, and (b) that Nationwide is liable for this violation.

_Cox, J._

WE CONCUR:

_Leach, C. J._

_Appelwick, J._