# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEVIN DOLAN and a class of similarly situated individuals, | No. 49876-6-II |
| Respondents, | |
| v. | |
| KING COUNTY, a political subdivision of the State of Washington, | UNPUBLISHED OPINION |
| Respondent, | |
| DEPARTMENT OF RETIREMENT SYSTEMS, | |
| Appellant. | |

MAXA, C.J. – This appeal involves the remedies phase of a class action lawsuit in which a class of public defenders employed by organizations with which King County contracted alleged that the County had been obligated to enroll them in Washington's Public Employees' Retirement System (PERS). The Supreme Court held that the County had such an obligation, and remanded for the trial court to address remedies. The Department of Retirement Systems (DRS) later intervened to address various remedy issues.

After more litigation and a second appeal, the class members and the County reached a settlement in which the County agreed that the class members would be retroactively eligible for PERS service credit dating back to 1978. The County also agreed to pay the full amount of

retroactive contributions into PERS relating to the class members. Left unresolved was whether the County also would be required to pay approximately $64 million in interest on the retroactive contributions to replace lost investment returns or whether that amount would be "socialized" – spread out among existing PERS participants – through an increase of contributions from existing PERS participants.

While litigation regarding the interest issue was pending, DRS issued a letter informing the County that DRS had decided under authority granted in RCW 41.50.125 to charge the County the full amount of the interest on the retroactive contributions. DRS subsequently argued that because the County did not seek review of this decision under the Administrative Procedure Act (APA), chapter 34.05 RCW, the trial court did not have jurisdiction to address the interest issue. The trial court ruled that it had jurisdiction. After an evidentiary hearing, the court ruled based on equitable principles that the County would be required to pay only a portion of the interest, $10.5 million, on the retroactive contributions.

DRS appeals the trial court's order, arguing that (1) the trial court erred in ruling on the County's interest obligation because the County did not seek review of DRS's interest decision under the APA; (2) the trial court erred in applying equitable principles to determine the County's interest obligation when RCW 41.50.125 authorized DRS to make interest decisions; and (3) even if the trial court properly addressed the interest issue, the court erred because equity does not support imposing only a portion of the interest obligation on the County.

We hold that (1) because the trial court obtained original subject matter jurisdiction regarding the interest matter before DRS's interest decision, under the "priority of action" rule the trial court had exclusive authority to decide the County's interest obligation; (2) the trial court did not err in exercising its equitable authority despite DRS's interest decision because

RCW 41.50.125's authorization to DRS to charge interest on late PERS payments was not mandatory or exclusive; and (3) the trial court did not err in ruling based on equitable principles that the County was required to pay only a portion of the interest on the retroactive PERS contributions.

Accordingly, we affirm the trial court's interest order and judgment.

FACTS

*County's Liability*

In 2006, Kevin Dolan filed a class action lawsuit against the County on behalf of all employees of public defender agencies with which the County had contracted to provide legal defense services. The complaint alleged that the class members were entitled to membership and benefits in PERS, but that the County had improperly failed to report their services to DRS or made retirement contributions on their behalf. The class members requested declaratory and injunctive relief concerning the County's obligation to provide PERS benefits and an order requiring the County to make all contributions needed to fund those benefits.

The parties agreed to divide the trial into separate phases to determine liability and, if necessary, remedies. In the liability phase, the trial court ruled after a bench trial that the class members should be considered public employees for purposes of coverage under PERS. Based on its decision, in April 2009 the court issued a permanent injunction requiring the County to enroll class members in PERS. The court reserved decision on all other issues.

The County appealed to the Supreme Court. *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011) (*Dolan* I). In its opinion, the court recounted events between the mid-1980s through 2005 in which the County exercised increasing control over the defender organizations. *Id.* at 303-08. The court concluded that the County had "gradually extended its right of control

3

over the defender organizations until they indeed have become vassal agencies of the county." *Id.* at 318-19. As a result, the court affirmed the trial court, held that the plaintiffs were County employees for purposes of PERS and were entitled to be enrolled in PERS, and remanded for further proceedings regarding remedies. *Id.* at 301, 322.

On remand, the trial court entered an order modifying its permanent injunction and ordering that the County enroll all currently employed class members in PERS. The County complied in April 2012. The trial court's order did not address the extent to which class members were entitled to retroactive service credit and how retroactive benefits would be funded.

*Initial Settlement Agreement and Trial Court Approval*

In December 2012, the County and the class entered into a tentative settlement agreement that was contingent on court approval. The County agreed to pay PERS contributions for retroactive PERS-eligible service back to 1978. The agreement stated that the County's PERS contributions would total approximately $30 million, which accounted for both employer and employee contributions. The settlement agreement was expressly conditioned on the County not having to pay interest on the retroactive contributions.

As part of the settlement agreement, the class released a variety of potential claims, including for other non-PERS benefits and denial of wages. The County agreed not to pursue a statute of limitations defense that, if successful, would have limited service credit for any time period more than three years before the lawsuit was filed. The County also agreed not to seek reimbursement from class members for the employee shares of the retroactive contributions.

The County and the class filed a joint motion for preliminary approval of the settlement agreement. The trial court preliminarily approved the settlement agreement in an order in March 2013. The preliminary approval order allowed DRS to submit objections to the settlement.

Shortly after the court's preliminary approval, DRS moved to intervene. The trial court issued a ruling denying DRS full intervention. But the court allowed DRS limited intervention to object to the settlement agreement and to have the right to appeal. In addition, the court stated that DRS would be subject to the court's orders, if any, requiring implementation of the settlement agreement.

In June 2013, the trial court entered an order granting final approval of the settlement agreement. The court ruled that DRS had no legal authority to charge the County interest and added that, even if DRS had such authority, charging interest would be unfair, inequitable, and arbitrary and capricious. The court retained jurisdiction over the matter and stated that the parties, as well as DRS, were subject to and were required to comply with the order.

*Settlement Agreement Appeal*

DRS appealed the trial court's approval order to this court. *Dolan v. King County*, No. 44982-0-II (Wash. Ct. App. Nov. 18, 2014) (unpublished), http://www.courts.wa.gov/opinions/ (*Dolan* II). DRS argued that the APA removed the trial court's original subject matter jurisdiction for matters affecting PERS, that the court erred in ruling that its final approval bound DRS, and that the court erred in denying DRS's motion to intervene as a full party. *Id.* at 1.

On jurisdiction, this court noted that the superior court had original jurisdiction except where exclusive jurisdiction was vested in another court. *Id.* at 10. The court stated that where the APA applies, it divests superior courts of original jurisdiction. *Id.* But under RCW 34.05.510, the limit on a superior court's original jurisdiction applies only where there has been

5

an "agency action." *Dolan* II, slip op. at 10. The court determined that DRS had taken no specific agency action and as a result, the APA had not removed the trial court's original subject matter jurisdiction. *Id.* at 10-11.

On the other two issues, the court agreed with DRS. First, the court held that DRS could not be bound by the trial court's final approval order because it was not a party to the settlement agreement. *Id.* at 11-12. Second, the court held that the trial court had erred in granting DRS only partial intervention. *Id.* at 14. The court reversed the trial court's final approval order, reversed the trial court's partial intervention order, and remanded for further proceedings. *Id.* at 14-15.

*Modification of Settlement Agreement*

On remand, DRS was allowed to intervene as a full party. The class subsequently moved to modify the trial court's April 2009 permanent injunction to clarify issues of service credit for class members. The class and the County also submitted a stipulation reaffirming the prior settlement agreement and clarifying certain issues. The stipulation stated that the County would pay any interest required by agreement between the County and DRS or by court order. DRS filed an opposition to the motion to modify.

On June 5, 2015, the trial court entered an Order Modifying Permanent Injunction. The order stated, "DRS initially opposed the motion [to modify], but now has agreed to the entry of this Order in the interests of partially settling this long dispute and obtaining a workable structure for the complexities of establishing the extensive retroactive service credit involved in this litigation." Clerk's Papers (CP) at 425. DRS signed the order as approved for entry.

The modification order stated that the class was entitled to receive retroactive PERS service credit for work as county employees between January 1, 1978 and March 31, 2012. The

County would be required to pay DRS retroactive employer and employee contributions of approximately $32 million. The order stated that the County and DRS did not agree on whether DRS could assess interest on retroactive service credit contributions, and that the order did not resolve that issue. Finally, the order stated that the statute of limitations defense would not be asserted as a defense.

The trial court scheduled a hearing to address payment of interest for October 2015.

*DRS Decision on Interest*

On September 17, 2015, DRS Director Marcie Frost sent a letter to the County stating that she had decided that it was appropriate to charge the County full interest on the retroactive PERS contributions for class members. Frost stated that she had discretionary authority under RCW 41.50.125 to charge interest to compensate for lost investment returns caused by late contribution payments. The letter stated that DRS had calculated the amount owed for employer and employee pension contributions to be $29,260,592.29 and had calculated the amount of interest owed to be $65,704,577.60. Frost later corrected the interest calculation to $64,422,596.55.

Frost stated that she had decided to charge interest after considering a report from the Office of the State Actuary (OSA). The OSA report concluded that the total liability as a result of the County's settlement was $96.1 million as of May 2015. If the County paid only the retroactive contributions and no interest, future PERS employer and employee contribution rates would need to increase by four or five basis points. A basis point equals one one-hundredth of a percent.

Frost also stated that she had consulted with interested groups and individuals about the proper action for DRS to take. The comments she received primarily were that pension costs

should be paid by the employers and employees that generate those costs, not by other PERS members.

The letter stated that if the County disagreed with DRS's calculation of contributions or assessment of interest, the County could file a petition for review under chapter 415-04 WAC within 120 days of the decision.

The County did not seek administrative review of the DRS decision stated in Frost's letter. Instead, the County took the position that the letter had no legal effect. The County stated that the amount the County was required to pay had to be resolved by agreement between the parties or by court order and that DRS lacked the authority to make unilateral decisions concerning PERS contributions and interest or other charges.

*Trial Court Hearing*

The trial court continued the hearing to determine the County's interest obligation from October 2015 to May 2016.

In a prehearing brief, DRS argued that it had made an administrative decision regarding assessment of interest, and that the exclusive means of obtaining appellate review of that decision was under the APA. Further, DRS argued that a person aggrieved by an administrative decision must exhaust all administrative remedies before obtaining judicial review. DRS emphasized that the County had not followed the proper administrative process for challenging the interest decision.

At the outset of the interest hearing, DRS argued that the trial court did not have jurisdiction over the interest issue because the County had not exhausted its administrative remedies. The court ruled that it had jurisdiction because the case arose from a lawsuit, not an administrative action. The court stated that the Supreme Court had recognized the trial court's

jurisdiction by affirming the trial court's original decision. In addition, the court declined to adopt the APA standard of proof and stated that it would decide the case based on equity jurisdiction.

Each party then called two witnesses to testify. The County called Dwight Dively, director of the County's office responsible for budgeting and financial management. Dively testified that in his experience, changes in the costs of a pension system should be socialized through an increase or decrease in the contribution rates for employers and employees throughout the system. He stated that having a separate payment stream from King County alone would be inconsistent with his understanding of how retirement system costs are socialized. Further, Dively testified that in prior communications, DRS had conveyed that it did not plan to charge interest, consistent with the County's prior experience.[1]

Dively also testified that the County did not have the money in its general fund to pay the entire interest payment. To cover its liability for the retroactive payment, the County had planned ahead after the trial court's initial ruling by cutting other budgets. But to fund the larger interest payment the County would probably have to issue bonds. Dively estimated that the County would service the bonds for 10 years, paying at least $7.5 million each year. He added that the County already faced a $50 million deficit for the next biennium, to which interest payments on the debt service would add $15 million. To cover this amount, the County would be required to reduce employees and services.

The County also called an expert actuarial witness, Ethan Kra, who reviewed the state actuary's impact analysis on enrolling the plaintiff class in PERS. Kra testified that pension

---

[1] In two prior class actions in the 1990s, with a combined total of approximately $5.2 million in retroactive contributions, DRS had not charged the County interest for retroactive PERS contributions.

plans typically socialize costs across the system. Impacts such as changes in the covered group, changes in the definition of compensation or service, or recognition of additional past service could affect contribution rates in a manner that is typically uniform across all employers in the plan.

For DRS, Frost testified that DRS could pay for retroactive liabilities either by socializing the cost or by having the responsible party pay. She agreed that DRS had not previously charged interest to an employer or conducted a liability analysis, but she stated that earlier cases were significantly smaller than this one and would not have triggered a general rate increase. Frost testified that because of how unique the County's situation was, DRS did not have guidelines or published regulations giving PERS employers notice of when they might be charged interest. And she denied that DRS had promised not to charge interest.

DRS also called deputy state actuary Lisa Won. Won testified about the OSA report and the impact of enrolling the class in PERS on system-wide contribution rates. She stated that for every $7 million increase in liabilities, there is a single basis point increase for employees and employers. Regarding how PERS is funded, Won stated that demographic changes do not get charged to a specific employer, but rather are socialized among all contributors for future service. Single PERS employers are never required to pay a specialized or segregated contribution rate. Won also testified about the practical impact of an increase in contribution rates, stating that for an employer with a $500,000 payroll, a five basis point increase would amount to $250 per year.

*Trial Court Ruling*

After the hearing, the trial court entered a written decision on both jurisdiction and the interest payment owed by the County.

10

Regarding jurisdiction, the trial court stated that this court in *Dolan* II had affirmed the trial court's subject matter jurisdiction and at no point indicated that the trial court lacked jurisdiction to decide DRS's objections to the settlement. In addition, the court rejected DRS's argument that the APA applied.

Regarding interest, the trial court concluded that it could exercise its equitable authority and that no statutory authority or case law limited the court in ordering a fair and equitable remedy. The court determined that some of the interest payments should be socialized, with the County assuming a somewhat greater burden than other PERS participants:

> This Court holds that socializing the cost of the lost interest income among the PERS participants is not unreasonable. No one government entity should bear the full burden of this cost when it was imposed as a judicial remedy that was opposed by that same government entity. What makes this unique is not requiring King County to bear some part of the cost, but the sheer magnitude of the amount DRS is requesting . . . .
>
> However, to offset the costs to PERS members, King County should assume some greater burden for the total amount requested by DRS. This decision acknowledges many of the arguments made by DRS in representing PERS members state wide. This balancing process is an attempt to recognize the equities presented by both parties in a difficult case.

CP at 2160-61.

The trial court concluded that it was equitable to assess the County interest in the amount of $10.5 million or a 1.5 basis point decrease in the total interest balance to all PERS employers and employees, whichever was less. The remaining interest would be socialized among PERS employers and employees. The parties subsequently agreed that King County would pay the $10.5 million amount.

Consistent with this decision, the trial court entered an order on jurisdiction and assessment of interest and entered a final judgment. The order outlined the equitable

11

considerations favoring each party. After balancing those equities, the court determined that it was equitable for the County to pay $10.5 million in interest into PERS.

DRS appeals the trial court's order and judgment.[2]

ANALYSIS

A.    SUPERIOR COURT JURISDICTION

DRS argues that the trial court erred in addressing the interest issue. DRS asserts that once it issued an administrative decision charging the County interest on the retroactive PERS contributions, the trial court could exercise only appellate jurisdiction over the interest issue and only if the County complied with the APA's procedural requirements. DRS claims that because the County did not follow the procedures under the APA for obtaining judicial review of DRS's interest decision, the County could not invoke the trial court's jurisdiction.

We apply the priority of action rule and hold that because the trial court obtained jurisdiction over injunction remedies long before DRS issued its interest decision, the trial court had exclusive authority to resolve the interest issue. As a result, we hold that the APA did not limit the trial court's ability to determine the amount of interest the County should pay into PERS.

1.    Legal Background

Article IV, section 6 of the Washington Constitution states that superior courts shall have original jurisdiction "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." *See also* RCW 2.08.010 (stating that the superior court has original jurisdiction in all cases in equity and all cases at law where the

---

[2] Dolan is a party to this appeal, but our decision does not affect the benefits payable to the class members.

amount in controversy amounts to $300). Article IV, section 6 applies to both original trial jurisdiction and original appellate jurisdiction. *James v. Kitsap County*, 154 Wn.2d 574, 588, 115 P.3d 286 (2005). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Pruczinski v. Ashby*, 185 Wn.2d 492, 499, 374 P.3d 102 (2016).

"[A] judicial power vested in courts by the constitution may not be abrogated by statute." *James*, 154 Wn.2d at 588. However, the constitution does not prevent the legislature from establishing procedural requirements for the resolution of particular types of disputes. *Id.* "[W]here statutes prescribe procedures for the resolution of a particular type of dispute, state courts have required substantial compliance or satisfaction of the spirit of the procedural requirements before they will exercise jurisdiction over the matter." *Id.*

*James* involved the Land Use Petition Act (LUPA), chapter 36.70C RCW. *Id.* at 587-89. The legislature established that LUPA is the "exclusive means of judicial review of land use decisions." RCW 36.70C.030(1). The court in *James* stated,

> [A] LUPA action may invoke the original appellate jurisdiction of the superior court, but congruent with the explicit objectives of the legislature in enacting LUPA, parties must substantially comply with procedural requirements before a superior court will exercise its original jurisdiction.

154 Wn.2d at 588-89.

Like LUPA, the APA provides procedural requirements for the invocation of a superior court's original appellate jurisdiction regarding administrative decisions. *Wells Fargo Bank, NA v. Dep't of Revenue*, 166 Wn. App. 342, 360, 271 P.3d 268 (2012). RCW 34.05.510 states that the APA "establishes the exclusive means of judicial review of agency action." Therefore, "before a challenge to agency action may invoke the superior court's original appellate jurisdiction, parties must substantially comply with the APA's procedural requirements." *Wells Fargo*, 166 Wn. App. at 360. And RCW 34.05.534 provides that "[a] person may file a petition

for judicial review under [the APA] only after exhausting all administrative remedies available within the agency."

### 2. Agency Action

Under RCW 34.05.510, the APA applies only to an "agency action." RCW 34.05.010(3) defines agency action to include "the implementation or enforcement of a statute."

DRS made its September 2015 decision assessing interest against the County pursuant to RCW 41.50.125, which states that DRS may charge interest on "member or employer contributions owing" to PERS. *See also* WAC 415-114-100 (stating that RCW 41.50.125 provides DRS with "the authority to assess interest on the overdue unpaid balance of a receivable"). As a result, that decision involved the implementation of a statute and constituted agency action under RCW 34.05.010(3).[3]

Therefore, the APA established the exclusive means of judicial review of DRS's interest decision under RCW 34.05.510 *unless* some other principle supersedes application of the APA.

### 3. Application of Priority of Action Rule

The County argues that because the trial court obtained jurisdiction over the County's interest obligation before DRS issued its interest decision, the court retained exclusive authority to resolve the matter.[4] We agree.

---

[3] This court in *Dolan* II stated that the APA's limits on the trial court's jurisdiction did not apply because *at that point* there had been no agency action as defined in RCW 34.05.010(3). Slip op. at 10-11. But that holding is inapplicable here because DRS did subsequently issue a decision that qualified as an agency action.

[4] DRS argues that the County cannot argue that the priority of action rule applies because the County did not raise that argument below. However, "we may affirm the trial court on any basis supported by the briefing and record below." *Huff v. Wyman*, 184 Wn.2d 643, 648, 361 P.3d 727 (2015). In addition, although the trial court's decision did not specifically reference the priority of action rule, it was based in part on the principle underlying the rule: that the interest issue derived from a preexisting lawsuit over which the trial court had assumed jurisdiction.

a.    Legal Principles

Under the priority of action rule, the forum that first gains jurisdiction of a matter retains exclusive authority until the controversy is resolved.  *City of Yakima v. Int'l Ass'n of Fire Fighters*, 117 Wn.2d 655, 675, 818 P.2d 1076 (1991); *Bunch v. Nationwide Mut. Ins. Co.*, 180 Wn. App. 37, 41, 321 P.3d 266 (2014).  The rule generally applies when the two actions are identical as to three elements: subject matter, parties, and relief.  *Bunch*, 180 Wn. App. at 41.  The identity must be sufficient to make a decision in one forum binding under res judicata or collateral estoppel as to proceedings in the other forum.  *Id.* at 42-43.  We do not apply the rule inflexibly, but rather attempt to carry out its underlying purpose.  *Id.* at 41.

The priority of action rule applies to determine authority between the superior court and an administrative agency.  *Int'l Ass'n of Fire Fighters*, 117 Wn.2d at 675.  Whether the priority of action rule applies is a legal question that we review de novo.  *Bunch*, 180 Wn. App. at 41.

b.    Analysis

Here, each of the three identity elements is present.  First, the subject matter of the trial court action and DRS's decision was the same.  The Supreme Court expressly remanded the case to the trial court for further proceedings regarding remedies.  *Dolan* I, 172 Wn.2d at 301, 322.  One of the issues the trial court expressly addressed in the original settlement approval was whether DRS could assess interest against the County on its retroactive PERS contributions.  DRS's decision also involved the County's obligation to pay interest on its retroactive PERS contributions.

Second, the trial court action and the DRS interest decision involved the same parties.  The County was a party in the trial court action and DRS intervened as a full party in that action.

They were the only two parties with a direct stake in the interest issue. DRS's interest decision was directed to the County.

Third, the relief at issue was the same. In both forums, the issue was the amount of interest the County owed on its retroactive PERS contributions.

Further, the identity of subject matter, parties, and relief means that any trial court ruling on the interest issue would have collateral estoppel effect on both the County and DRS. Collateral estoppel applies when (1) the issue decided in the prior action is identical with the one presented in the current action, (2) the prior action ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with a party in the earlier proceeding,[5] and (4) application of collateral estoppel will not cause an injustice against the estopped party. *Dot Foods, Inc. v. Dep't of Revenue*, 185 Wn.2d 239, 254, 372 P.3d 747 (2016), *cert. denied* 137 S. Ct. 2156 (2017). All these elements would apply to a trial court ruling on the County's interest obligation.

Because the priority of action elements are present regarding the trial court action and the DRS decision, the forum that first obtained jurisdiction retained exclusive authority until the dispute is resolved. *Bunch*, 180 Wn. App. at 41. There is no question here that the trial court obtained jurisdiction first. The class filed its complaint in 2006, invoking the trial court's equity jurisdiction by requesting an injunction. *See Emerick v. Cardiac Study Ctr., Inc., P.S.*, 189 Wn. App. 711, 731-32, 357 P.3d 696 (2015). The Supreme Court remanded for further proceedings regarding remedies in 2011, *Dolan* I, 172 Wn.2d at 301, 322; the trial court approved the settlement that did not allow assessment of interest against the County in 2013; this court held in

---

[5] An intervener is treated as a party. *Wash. Rest. Ass'n v. Liquor Control Bd.*, 200 Wn. App. 119, 134, 401 P.3d 428 (2017).

*Dolan* II in 2014 that the trial court had original subject matter jurisdiction, slip op. at 10-11; and after remand the trial court in June 2015 set a hearing to address the interest issue. Only after all of these events had occurred, in September 2015, did DRS issue its interest decision. As a result, under the priority of action rule the trial court retained exclusive authority to resolve the County's interest obligation.

DRS argues that the priority of action rule does not apply because the trial court did not have concurrent original jurisdiction with DRS. DRS claims that it had exclusive jurisdiction under RCW 34.05.510. But as this court recognized in *Dolan* II, RCW 34.05.510 was inapplicable and the trial court had original subject matter jurisdiction until DRS engaged in an agency action. Slip op. at 10-11. Therefore, the trial court had jurisdiction before September 2015 and that jurisdiction was concurrent with DRS's jurisdiction when DRS made its interest decision.

DRS also argues that applying the priority of action rule is inconsistent with this court's opinion in *Wells Fargo*, 166 Wn. App. 342. But that case concerned a different issue – whether an agency's letter constituted a final agency action and thereby implicated the APA's procedural requirements. *Id.* at 350. The court held that the APA applied, and therefore that Wells Fargo could not later bring a separate action in superior court challenging the agency's decision. *Id.* *Wells Fargo* did not address whether an agency has the authority to make a decision that resolves a dispute subject to ongoing litigation.

Accordingly, we hold under the priority of action rule that the trial court had exclusive authority to resolve the County's interest obligation regarding its retroactive PERS contributions and that DRS lacked authority to decide the issue.

B.      TRIAL COURT'S EXERCISE OF EQUITABLE AUTHORITY

DRS argues that the trial court erred in exercising its equitable authority to determine the County's interest obligation because exercising that authority was inconsistent with RCW 41.50.125's grant of authority to DRS to charge interest on late PERS contributions. We disagree.

1.      Legal Background

Article IV, section 6 of the Washington Constitution gives trial courts authority to fashion equitable remedies. *Bowcutt v. Delta N. Star Corp.*, 95 Wn. App. 311, 319, 976 P.2d 643 (1999). An injunction is a form of equitable relief. *Nw. Props. Brokers Network, Inc. v. Early Dawn Estates Homeowners' Ass'n*, 173 Wn. App. 778, 789, 295 P.3d 314 (2013). A trial court's equitable power is "inherently flexible and fact-specific." *Proctor v. Huntington*, 169 Wn.2d 491, 503, 238 P.3d 1117 (2010).

However, the general rule is that "an equitable remedy is an extraordinary, not ordinary, form of relief," available "only when there is a showing that a party is entitled to a remedy and the remedy at law is inadequate." *Sorenson v. Pyeatt*, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006). Equitable relief is unavailable when a statute provides the method for obtaining relief. *See Longview Fibre Co. v. Cowlitz County*, 114 Wn.2d 691, 699, 790 P.2d 149 (1990); *Coluccio v. King County*, 82 Wn. App. 45, 51-53, 917 P.2d 145 (1996).

More specifically, "we will not give relief on equitable grounds in contravention of a statutory requirement." *Longview Fibre*, 114 Wn.2d at 699. " 'Equitable principles cannot be asserted to establish equitable relief in derogation of statutory mandates.' " *Rhoad v. McLean Trucking Co.*, 102 Wn.2d 422, 427, 686 P.2d 483 (1984) (quoting *Dep't of Labor & Indus. v. Dillon*, 28 Wn. App. 853, 855, 626 P.2d 1004 (1981)). Equity "follows the law and cannot

18

provide a remedy where legislation expressly denies it." *Stephanus v. Anderson*, 26 Wn. App. 326, 334, 613 P.2d 533 (1980); *see also Ocwen Loan Servicing, LLC v. Bauman*, 195 Wn. App. 763, 764-65, 383 P.3d 524 (2016) (holding that the trial court could not order equitable relief that went beyond the statutory relief).

On the other hand, the existence of a statutory remedy does not necessarily preclude an equitable remedy unless the legislature intended the statutory remedy to be exclusive or the two remedies are so inconsistent that they cannot simultaneously apply. *See King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 625-28, 398 P.3d 1093 (2017) (addressing whether a statutory attorney fee provision abrogated a common law equitable rule).

A trial court's authority to order equitable relief is a question of law that we review de novo. *Kave v. McIntosh Ridge Primary Rd. Ass'n*, 198 Wn. App. 812, 819, 394 P.3d 446 (2017).

2.    Equitable Authority in Light of RCW 41.50.125

DRS argues that the trial court's exercise of equitable authority was improper because it rendered RCW 41.50.125 ineffective. As noted above, RCW 41.50.125 provides DRS with the authority to charge interest on late PERS contributions:

> The department may charge interest, as determined by the director, on member or employer contributions owing to [PERS]. The department's authority to charge interest shall extend to all optional and mandatory billings for contributions where member or employer contributions are paid other than immediately after service is rendered.

When the legislature enacted RCW 41.50.125, it also enacted a statement of findings:

> Whenever employer or member contributions are not made at the time service is rendered, the state retirement system trust funds lose investment income which is a major source of pension funding. The department of retirement systems has broad authority to charge interest to compensate for the loss to the trust funds, subject only to explicit statutory provisions to the contrary.

Laws of 1994, ch. 177, § 1.

Equitable relief might be unavailable if RCW 41.50.125 provided an express *requirement* that interest be charged on late PERS contributions. When a statute expressly provides a process or remedy, courts cannot ignore that requirement and apply principles of equity. *See Longview Fibre*, 114 Wn.2d at 696-99 (upholding technical protest requirement as prerequisite for taxpayer refund); *Rhoad*, 102 Wn.2d at 425-27 (upholding Department of Labor and Industry's statutory right to a portion of a worker's recovery in workers' compensation lawsuit against a third party). But the statute here does not provide such a requirement. RCW 41.50.125 gives DRS only the *option* to charge interest, stating that DRS "may" charge interest. DRS's argument that the legislature intended for interest to *always* be charged to the employer who caused lost investment returns by making late PERS contributions is inconsistent with the statutory language.

Similarly, equitable relief might be unavailable if RCW 41.50.125 expressly stated that DRS had *exclusive* authority to decide whether to charge interest on late PERS contributions. In that situation, application of equitable principles again would contravene a statutory requirement. *See Vinci Constr.*, 188 Wn.2d at 627-28 (holding that the court must find that the legislature explicitly intended a statutory remedy to be exclusive to negate a common law equitable remedy); *Stephanus*, 26 Wn. App. at 329-34 (rejecting equitable defense over contrary statute). But the statute does not provide such exclusive authority. RCW 41.50.125 states only that DRS "may charge interest" and notes DRS's "authority to charge interest" without addressing exclusivity. And although the legislative finding associated with RCW 41.50.125 states that DRS has broad authority "subject only to explicit statutory provisions to the contrary," Laws of 1994, ch. 177, § 1, the finding does not state that DRS has exclusive authority.

20

Because RCW 41.50.125 does not state a requirement that interest must be charged and does not expressly grant DRS exclusive authority over the interest decision, the trial court retained authority to address the interest issue based on equitable principles.[6] Both the trial court and DRS initially had authority to rule on the interest issue. But the trial court had exclusive authority under the priority of action rule because the court obtained jurisdiction first. *Bunch*, 180 Wn. App. at 41.

The Supreme Court applied a similar analysis in *International Association of Fire Fighters* to determine whether the trial court or the Public Employment Relations Commission (PERC) had authority to address unfair labor practice complaints. 117 Wn.2d at 674-75. Former RCW 41.56.160 (1994) provided that PERC "is empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders." The court ruled that this statute and a statutory recognition of PERC's expertise in this area did not prevent superior courts from resolving unfair labor practice complaints. *Int'l Ass'n of Fire Fighters*, 117 Wn.2d at 674-75. Instead, the court recognized that both PERC and the superior court had authority to resolve the question presented. *Id.* at 675. The court then applied the priority of action doctrine to determine that PERC had exclusive authority in that case because it had obtained jurisdiction before the superior court. *Id.* at 675-76.

We hold that the trial court did not err in exercising its equitable authority to address whether the County should be charged interest on the retroactive PERS contributions.

---

[6] DRS cites three cases to support its position: *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 110 S. Ct. 680, 107 L. Ed. 2d 782 (1990); *Mulhausen v. Bates*, 9 Wn.2d 264, 114 P.2d 995 (1941); and *Boronat v. Boronat*, 13 Wn. App. 671, 537 P.2d 1050 (1975). These cases clearly are inapplicable and do not compel a different result.

C.    TRIAL COURT'S INTEREST RULING

DRS argues that even if the trial court had the authority to rule on the interest issue, the court erred by ordering the County to pay only a portion of the interest on its retroactive PERS contributions.  We disagree.

1.    Legal Principles

The trial court has broad discretion to fashion an equitable remedy.  *Arzola v. Name Intelligence, Inc.*, 188 Wn. App. 588, 596, 355 P.3d 286 (2015).  We review the trial court's consideration of the equities to determine whether the court abused its discretion.  *Id.*  A trial court abuses its discretion if its decision is based on untenable grounds, is manifestly unreasonable, or is arbitrary.  *Hoover v. Warner*, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015).

We review a trial court's findings of fact for substantial evidence.  *City of Puyallup v. Hogan*, 168 Wn. App. 406, 418, 277 P.3d 49 (2012).  A finding is supported by substantial evidence if the evidence is sufficient to persuade a fair-minded person of the finding's truth.  *Id.*  In addition, unchallenged findings are verities on appeal.  *Martin v. Smith*, 192 Wn. App. 527, 532, 368 P.3d 227, *review denied*, 186 Wn.2d 1011 (2016).

2.    Trial Court's Findings

In its final order on assessment of interest, the trial court stated that several equities weighed against imposing the entire cost of retroactive service credit on the County.  These equities included:

> a.  Prior to the Supreme Court's decision [in *Dolan* I], King County and DRS were both opposed to the *Dolan* class members receiving any PERS benefits. . . . [N]either DRS nor King County considered the public defense personnel to be King County employees for purposes of enrollment in PERS.
>
> b.  Prior to February 1, 2012 [the date of the Supreme Court mandate], the interpretation of PERS enrollment rules applied by DRS and all PERS employers

was that the *Dolan* class members were not employees of King County eligible for enrollment in PERS.

c. . . . King County negotiated in good faith to reach a settlement and avoid further litigation.

d. Awarding the amount of interest requested by DRS would have a substantial negative budgeting impact on King County and its programs. . . . The magnitude of this expense is substantially burdensome on King County. . . .

e. It is unlikely that PERS will face a class action like *Dolan* in the future due to the legislative fix that was passed shortly after the Supreme Court decision.[7] Considering the unprecedented nature of this case, exceptional remedies are in order.

CP at 2173-74.

The court also expressly adopted the equitable arguments asserted by the County in its post-hearing response brief. These arguments included that multi-employer plans like PERS are designed to socialize pension needs through contribution rates; DRS had never published regulations or guidelines for when interest would be imposed; DRS had never before sought to recover interest from a single employer; DRS's solicitation for input into its interest decision was misleading; since the *Dolan* I decision employer contribution rates have increased more than 400 basis points, while socializing the County's interest costs would cause only a four or five basis point increase; and socializing the County's interest costs would cause only minimal increases in both employer and employee contributions.

The trial court concluded that socializing some portion of the cost of the lost investment income would be reasonable.

---

[7] The "fix" attempts to clarify that employees of government contractors are not eligible for membership in state retirement programs. LAWS OF 2012, ch. 236, § 1(3). It includes a provision stating that for purposes of PERS eligibility, government contractors are not qualifying employers. LAWS OF 2012, ch. 236, § 2(14)(c); *see* RCW 41.26.030(14)(c). The law expressly does not impact the Supreme Court's decision in *Dolan* I. LAWS OF 2012, ch. 236, § 1(6).

3.   Analysis

Here, several of the trial court's considerations support its equitable ruling that the County should be obligated to pay only a portion of the interest on the retroactive PERS contributions.  Three considerations appear to be most significant.

First, the testimony of all four of the parties' witnesses established that multi-employer plans are designed to socialize pension costs.  For the County, Dively testified that in his experience, changes in the costs of pension systems are socialized through system-wide increases or decreases in contribution rates.  The County's expert Kra also testified that pension plans typically socialize costs across the system.  DRS Director Frost testified that DRS paid for retroactive liabilities either by socializing the cost or by having the responsible party pay.  She also stated that DRS had not previously charged interest to an employer.  State actuary Won testified that typically demographic changes are socialized rather than charged to a specific employer, and that with respect to contribution rates, single employers are never required to pay a specialized or segregated rate.

Second, the evidence showed that requiring PERS to absorb most of the interest obligation would have a limited impact on contribution rates, particularly relative to other recent increases.  In its interest decision, DRS stated that socializing the interest would require future PERS employer and employee contribution rates to increase by four or five basis points.  Won testified that for an employer with a $500,000 payroll, a five basis point increase would amount to $250 per year.  By contrast, Dively testified that between April 2012 and May 2016, contribution rates had increased by 410 basis points.  Over a slightly longer period, between July 2009 and July 2015, Kra testified that the employer contribution rate increased by almost 600 basis points and the employee contribution rate increased by over 220 basis points.

24

Third, the evidence showed that imposing the entire interest obligation of approximately $64 million on the County would have a substantial negative impact on the County and its programs. As Dively testified, the County would be required to issue bonds at a likely cost of $7.5 million per year for 10 years. It was undisputed that the additional cost would add to the County's current general fund deficit, requiring the County to reduce some combination of employees and services.

DRS argues that the trial court's considerations do not provide a legitimate equitable basis for shifting most of the interest cost from the County to innocent PERS participants.[8]

Initially, DRS argues that equity does not favor the County because the County's voluntary conduct in settling with the class members caused the obligation to pay late pension contributions and related interest. DRS claims that no court ordered the County to provide a retroactive service credit back to 1978 – the County agreed to that remedy in the settlement agreement in exchange for the release of various non-pension claims. Further, DRS points out that the County relinquished an argument that the three-year statute of limitations should limit any retroactive benefits. DRS argues that PERS participants should not be required to subsidize the County's settlement. DRS relies on a rule of equity that "he who makes a loss possible should suffer the loss." *German American Bank of Seattle v. Wright*, 85 Wash. 460, 471, 148 P. 769 (1915).

However, as the County emphasizes, DRS intervened as a full party before the trial court approved the class action settlement. The County emphasizes that DRS agreed to the trial court's entry of the order modifying the injunction, which established the retroactive service credit and waived the statute of limitations defense. According to the County, DRS made a

---

[8] DRS does not argue that substantial evidence did not support the trial court's considerations.

tactical decision not to seek a ruling on the statute of limitations defense or otherwise contest the amount of the retroactive service credit.

DRS also specifically challenges the trial court's enumerated considerations as well as several of the incorporated considerations. First, DRS argues that it is immaterial that the County and DRS both originally took the position that the class members were not eligible for PERS. But this fact shows that it was not solely the County's "fault" that the class members were not enrolled in PERS. DRS also interpreted the PERS rules as denying the class members PERS eligibility.

Second, DRS argues that the trial court's finding that the County negotiated the class action settlement in good faith does not provide a basis for equitable relief. But the court apparently was noting that the County's tentative settlement represented a genuine attempt to resolve the liability imposed in *Dolan* I rather than an attempt to transfer any responsibility to PERS. And DRS ultimately agreed to the settlement terms when it approved the order modifying the injunction.

Third, DRS argues that the amount of money at issue and the burden on the County are not relevant considerations. But when a trial court exercises its equitable authority, it attempts to balance the relative interests of the parties. *Nw. Gas Ass'n v. Wash. Utils. & Transp. Comm'n*, 141 Wn. App. 98, 122, 168 P.3d 443 (2007). DRS's stated position shows that the amount of money at issue is relevant. By charging interest because the County's pension liability exceeds $7 million, DRS determined that changes in pension liability should be socialized only when the system is burdened below a certain level.

Fourth, DRS argues that the novelty of this case has no bearing on the application of equity. But DRS itself highlighted the unique size of the County's settlement as a reason to

exercise its discretion and charge interest, despite DRS's decision not to do so in previous cases. DRS's decision is consistent with the court's explanation, that given the "unprecedented nature of this case, exceptional remedies are in order." CP at 2160. And the court apparently recognized that because this situation was so unusual, its ruling would not have any significant precedential effect that might negatively affect PERS in the future.

Finally, DRS argues that several other miscellaneous considerations do not support the application of equity. The County responds that a number of the considerations support the trial court's ruling. We note without specifically examining each of these considerations that some or all of them properly factored into the trial court's exercise of its discretion.

Significantly, DRS does not address two of the most important considerations that the trial court incorporated by reference: that multi-employer plans like PERS are designed to socialize pension needs through contribution rates and that socializing the County's interest costs would cause only minimal, relatively insignificant increases in both employer and employee contributions.

The trial court's three primary considerations are supported by the record and support the trial court's ruling that some of the lost investment income should be socialized. Requiring the County to be solely responsible would be very burdensome, and would result in it reducing services and incurring debt in addition to its current budget deficit. By contrast, socializing the cost would be consistent with the typical practice, and would result in an increase in contribution rates that is substantially smaller than other increases over the previous few years. And although some of DRS challenges to other considerations may have merit, the trial court had broad discretion in the exercise of its equitable authority and there is no requirement that all the considerations support the court's ruling.

Accordingly, we hold that the trial court did not abuse its discretion by exercising its equitable authority to rule that the County was required to pay only a portion of the interest obligation.

CONCLUSION

We affirm the trial court's interest order and judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

JOHANSON, J.

MELNICK, J.