IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| VILLA MARINA ASSOCIATION OF APARTMENT OWNERS, a Washington Non-Profit Corporation, | ) ) ) ) | No. 81865-1-I |
| Respondent, | ) ) | |
| v. | ) ) | |
| JOHN E. COLLINS, JR. a/k/a JAKE E. COLLINS, JR., an individual; and JANE or JOHN DOE COLLINS, an individual, and the marital or quasi-marital community comprised thereof, | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) ) | |

BOWMAN, J. — The Villa Marina Association of Apartment Owners (Association) sued John Collins Jr., an Association member, seeking a money judgment for delinquent assessments and a decree of foreclosure. Collins contends the court erred in granting summary judgment in the Association's favor on reconsideration, appointing a receiver over his unit, and awarding the Association its attorney fees and costs. We affirm the order appointing a receiver. But because there remains a genuine issue of material fact as to the amount of Collins' alleged delinquency, we reverse the order granting summary judgment. We also hold that because the trial court based the fee award at least in part on the Association's success in obtaining summary judgment, the court must vacate the award, and remand for further proceedings.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Collins owns unit 173 of the Villa Marina Condominium.[1]  As a unit owner, Collins is subject to Villa Marina's condominium declaration, which authorizes the Association to collect assessments.  Collins is also subject to the Association's "Collection Policy," which authorizes the Association to collect late fees and interest.

In December 2016, the Association sued Collins for allegedly delinquent assessments (2016 Lawsuit).  Collins made a $12,006.86 payment to the Association to settle the lawsuit (Settlement Payment).  The Association claimed in a January 2017 payoff statement that this amount was the outstanding balance on Collins' account through February 2017.  But the record contains no signed settlement agreement, no agreement as to how the Association would apply the funds, and no mutual releases of liability.  On March 2, 2017, the trial court entered the parties' stipulation to dismiss the 2016 Lawsuit with prejudice.

In December 2019, the Association again sued Collins.  That lawsuit is the subject of this appeal.  The Association alleged that Collins' account had been delinquent since September 2018 and requested a money judgment, a decree of foreclosure, and appointment of a receiver.

In May 2020, the Association moved for summary judgment.  In support of its motion, the Association relied on a "summary ledger" prepared by its attorney, Rachel Burkemper, to establish the amount Collins' owed.  Burkemper prepared

---

[1] Collins does not live in the unit.

the summary ledger "based on the debits and credits found in the Association's accounting records," which the Association also submitted to the court.

Burkemper declared that the "starting point" for the summary ledger was August 17, 2018, the last time Collins was current on assessments according to the Association's accounting. According to the Association, Collins had a credit balance of $421.20 on that date. Burkemper observed that "it appeared that [the Association's] managing agent had applied the [Settlement P]ayment . . . in a manner that benefitted Mr. Collins by hundreds of dollars." But Burkemper declared that if one were to start with a $0.00 balance as of March 1, 2017 and track only assessments and payments from that date forward without late fees or interest, Collins' account was delinquent by $128.32 on August 17, 2018. Even so, Burkemper used the $421.20 credit balance as the starting point for the summary ledger "to minimize a dispute over how the . . . [S]ettlement [P]ayment was applied." The summary ledger showed that after considering the $421.20 credit balance and adding assessments, late fees, interest, and attorney fees, Collins owed the Association $40,072.65.

Collins opposed the Association's motion. He declared that when the Association filed the 2016 Lawsuit, he was not behind on assessments, and that the late fees and interest were "unjustified" because the Association imposed them on assessments not yet due. Collins said he "never had any problems with the Association until 2015," when he elected to pay certain special assessments in a lump sum instead of in monthly installments. Despite this election, the Association charged his account for monthly installments, and then late fees and

interest began to accrue. Collins also asserted that the Association's records revealed it did not credit his account for two 2016 payments and provided copies of the cancelled checks. According to Collins, the Association also had a practice of posting payments months after it received checks, leading to more interest and late fees.

Collins declared that "[b]ecause of the Association's confusing accounting, and rather than pay attorneys' fees, [he] made the business decision to settle" the 2016 Lawsuit by paying the Association "what it demanded," the $12,006.86 Settlement Payment. According to Collins, if one did not count the unjustified late fees, interest, and attorney fees, his account had a credit balance of $11,310 after applying the Settlement Payment. In support, Collins submitted his own accounting of assessments levied and payments made from July 1, 2014 through the February 2017 Settlement Payment. Collins argued that summary judgment was improper and that the court should order an accounting to "correctly identif[y] the credit Mr. Collins had after the [2016 L]awsuit[,] as this number is directly relevant to how much Mr. Collins owes now."

In its reply in support of summary judgment, the Association did not address the merits of Collins' assertions about its accounting before settlement of the 2016 Lawsuit. Instead, it argued that res judicata barred any argument about amounts incurred and paid before the parties agreed to dismiss the 2016 Lawsuit. Accordingly, Collins had "the ability to dispute only the credits tracked on the Association's ledger from March 1, 2017 to present."

4

The Association asserted that after making the Settlement Payment, Collins did not make another payment until May 2017, by which time another $1,648.02 of assessments ($824.01 for April 2017 and $824.01 for May 2017) had accrued.  The Association pointed out that despite the foregoing, as of April 14, 2017, "the Association's accounting generously only showed [Collins] as owing $154.55; which is hundreds of dollars less than what he actually owed."  Thus, any inaccuracy in the Association's accounting created a "windfall" to Collins.

In response to Collins' assertion that the Association improperly delayed depositing checks, it explained that rather than having a trial "over a possible error that might have resulted in $1-200 of interest, the Association would rather save the legal and expert fees by removing the interest that would have accrued if we accept [Collins'] assertions as true."  So it submitted an updated summary ledger that removed interest it charged from March 1, 2017 through August 31, 2018.  The updated ledger also purported to post payments on the dates the Association's management company originally stamped them as received, "further reducing the interest by several dollars."  The Association asserted that "[t]hese adjustments fully resolve the accounting discrepancy" and that even after the adjustments, Collins owed the Association $44,092.27, including attorney fees, costs, late fees, and interest.

The trial court held the summary judgment hearing on July 8, 2020.  It denied the motion, stating that "the accountings are just too confusing for me to be able to clearly determine that you have granted . . . every possible credit that

5

Mr. Collins . . . may be entitled to," and "that means . . . there's a genuine issue of material fact as to how this accounting has to be done."  But the trial court later granted the Association's motion to appoint a custodial receiver over Collins' unit.

On July 16, 2020, the Association moved for reconsideration of the trial court's order denying summary judgment.  The Association again argued that there was "no lawful way for a party or trier of fact to analyze events that transpired prior to March 1, 2017" because "[t]he parties agreed to a sum-certain amount to bring [Collins'] assessment account current through the end of February 2017, which resulted in dismissal of the [2016 L]awsuit."  It submitted another summary ledger that began with a $0.00 balance as of March 1, 2017; calculated the assessments, late fees, and interest accrued since then; and applied Collins' payments on the dates "most favorable" to him.  According to that ledger, Collins owed the Association $49,425.79, $5,333.52 more than the $44,092.27 the Association requested in its earlier reply in support of summary judgment.  The Association urged the court to grant summary judgment in its favor for $44,092.27, arguing that any inaccuracies in the Association's earlier ledgers amounted to "a windfall to [Collins] totaling more than $5,000."

The trial court granted the Association's motion for reconsideration, citing CR 59(a)(1)(7) and (9).[2]  It ruled:

> There is no genuine issue of material fact presented in the case as framed by [the Association]'s motion.  All of the uncertainties created by the multiple ledgers in this case are removed by [the] motion because the motion takes the facts most favorably to Mr.

---

[2] These rules provide that a trial court decision may be vacated, and reconsideration granted, if "there is no evidence or reasonable inference from the evidence to justify . . . the decision, . . . it is contrary to law," or if "substantial justice has not been done."  CR 59(a)(1)(7), (9).

Collins on every disputed point. Consequently, the resulting judgment is the best that Collins could do if the case went to trial.

The trial court entered judgment for the Association for $44,092.27, the amount the Association requested at summary judgment. The trial court also entered findings of fact and conclusions of law in support of the attorney fees and costs totaling $24,922.13, awarded as part of the total judgment. The court later entered a supplemental judgment for another $11,415.35 in attorney fees and costs.

Collins appeals.

ANALYSIS

Summary Judgment

Collins contends that because there remains a genuine issue of material fact as to the amount of any delinquency owed to the Association, the trial court erred by granting summary judgment for the Association. We agree.[3]

We review orders on summary judgment de novo, engaging in the same inquiry as the trial court. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rublee v. Carrier Corp., 192 Wn.2d 190, 198, 428 P.3d 1207 (2018). Put another way, summary judgment "should be granted only if, from all

---

[3] Collins also assigns error to the trial court's separate order granting reconsideration. But because we hold that the trial court erred by granting summary judgment, we need not decide this issue. See Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000) (" '[I]f resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.' ") (internal quotation marks omitted) (quoting State v. Peterson, 133 Wn.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring)).

the evidence, a reasonable person could reach only one conclusion." Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

"Summary judgment 'is subject to a burden-shifting scheme.' " Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 326, 387 P.3d 1139 (2016) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)). The party moving for summary judgment "bears the initial burden of demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). "Thereafter, the nonmoving party must set forth specific facts evidencing a genuine issue of material fact for trial." Schaaf, 127 Wn.2d at 21. "In reviewing the evidence, the trial court must consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party." Schaaf, 127 Wn.2d at 21.

Here, the Association bears the ultimate burden to prove the amount of Collins' alleged delinquency. See Tesdahl v. Collins, 2 Wn.2d 76, 81-82, 97 P.2d 649 (1939) ("To support a mortgage, there must be a debt capable of identification, and the amount thereof must be ascertainable."); see also RCW 64.34.364(9) (providing that a condominium association's lien may be foreclosed judicially as a mortgage); Conklin v. Buckley, 19 Wash. 262, 265, 53 P. 52 (1898) (remanding to trial court to set aside decree of foreclosure where there appeared to be "a substantial difference between the amount . . . found [by the trial court] and that justly due"). Accordingly, to prevail on summary judgment, the

Association needed to establish the absence of a genuine issue of material fact as to that amount.

The Association did not meet its initial burden to show the absence of a genuine issue of a material fact—namely, the correct "starting point" for calculating Collins' alleged delinquency at summary judgment. The Association based its entitlement to judgment as a matter of law entirely on the premise that the 2017 Settlement Payment "zeroed out" the balance on Collins' account as of March 1, 2017. Thus, to prevail on summary judgment, the Association had to prove that there was no genuine issue of material fact that the balance on Collins' account just before he made the Settlement Payment was at least $12,006.86, the amount of the Settlement Payment. While the Association submitted a declaration from its managing agent to support the summary ledgers purporting to reconstruct the balance on Collins' account from March 1, 2017 onward, it points to no admissible evidence in the record establishing that the balance on Collins' account was at least $12,006.86 before he made the Settlement Payment.[4]

Furthermore, Collins declared that before the 2016 Lawsuit settled, the Association failed to credit two payments he made and charged special assessments (and resulting late fees and interest) monthly even though he

---

[4] The Association provided a declaration from Laura Lotz, its management company's community association manager, attaching and authenticating the Association's historical ledgers. But these ledgers date back to only September 2016, and they do not show an account balance of $12,006.86 as of the end of February 2017. In fact, one ledger shows a credit of $2,012.27 after receiving the Settlement Payment. Burkemper declared that her firm did not bill the Association for some of the fees included in the January 2017 payoff statement until March 2017. But Burkemper's declaration is not sufficient to establish the accuracy of the Association's underlying accounting.

elected to pay them in a lump sum. Viewed in the light most favorable to Collins, these assertions also raise a genuine issue of material fact as to whether the balance on Collins' account was $0 (or some credit balance) following application of the Settlement Payment.[5] The trial court erred by granting summary judgment.

The Association disagrees and contends, as it did below, that res judicata[6] bars any dispute about its accounting before March 1, 2017 as a matter of law.[7] The Association cites a single case in support of this proposition, Le Bire v. Department of Labor & Industries, 14 Wn.2d 407, 128 P.2d 308 (1942).[8] But Le Bire is readily distinguishable. In Le Bire, the joint board of the Department of

---

[5] For this reason, this case is readily distinguishable from the case the Association cites in its statement of additional authority because there, the credits the lender applied to the borrower's account "conceded any possible contested amount." Howard v. JP Morgan Chase Bank, N.A., No. 81968-2-I, slip op. at 7-8 (Wash. Ct. App. Aug. 2, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/819682.pdf (emphasis added).

[6] The term "res judicata" has been used by courts to refer both to claim preclusion and issue preclusion. See Bunch v. Nationwide Mut. Ins. Co., 180 Wn. App. 37, 43, 321 P.3d 266 (2014) ("The generic term 'res judicata' may include both res judicata or claim preclusion and collateral estoppel or issue preclusion."). It is unclear which theory the Association had in mind here, in large part because the Association's briefs both below and on appeal address only whether the order dismissing the 2016 Lawsuit constituted a final judgment on the merits, a threshold requirement under both theories. See 14A DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:23, at 557-58 ("A judicial determination must generally be (1) final and (2) on the merits to have [claim preclusive] effect."), § 35:34, at 607 ("[T]he party asserting collateral estoppel bears the burden of persuading the court that the prior action ended in a final judgment on the merits.") (3d ed. 2018). The Association did not, and does not, address the remaining elements of either theory. Nevertheless, as we discuss below, the sole case that the Association relies on in this appeal is unpersuasive; thus, we need not determine which theory the Association had in mind.

[7] The Association asserts that the issue of res judicata "is abandoned by Collins's failure to meaningfully brief" it. Because the Association bore the burden at summary judgment to establish the absence of any genuine issue of material fact as to the correctness of its starting point for calculating Collins' alleged delinquency, we do not consider this issue abandoned.

[8] The Association asserts that it raised additional theories and arguments below to support its assertion that any challenge to its pre-March 2017 accounting is barred, and it tries to incorporate those arguments by reference. But the Association briefed only res judicata below. It invoked the voluntary payment doctrine, but only in passing, and only in footnotes. Accordingly, we do not consider whether the voluntary payment doctrine applies here. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration," and "trial court briefs cannot be incorporated into appellate briefs by reference.").

Labor and Industries (L&I) entered an order determining that Arthur Le Bire had arthritis when he injured his knee on the job, denied liability for treatment of his arthritis, and closed his claim for additional disability benefits based on the order. Le Bire, 14 Wn.2d at 409, 411-12. Later, Le Bire applied to L&I to reopen his claim, "alleging in his application that his knees had become stiff and more painful." Le Bire, 14 Wn.2d at 412. L&I refused, and Le Bire appealed to the superior court, which dismissed his appeal because the joint board's earlier order was "res judicata of the same issues" presented in Le Bire's appeal. Le Bire, 14 Wn.2d at 413-14.

Our Supreme Court affirmed the dismissal. Le Bire, 14 Wn.2d at 420. It observed that the board's earlier order "adopted the findings and recommendations of several medical commissions" and "determined that at the time of his injury," Le Bire "had a preexisting disease of arthritis" and that "his arthritic condition was not due or related to the knee injury." Le Bire, 14 Wn.2d at 414-15. The Supreme Court held that absent a successful appeal or a showing of "fraud or something of like nature," "an order or judgment of the department resting upon a finding, or findings, of fact becomes a complete and final adjudication, binding upon both the department and the claimant." Le Bire, 14 Wn.2d at 415. And because "the order of the joint board constituted a final judgment upon definite issues then before it," it barred Le Bire from reraising those issues in a subsequent appeal, even though the judgment stemmed from a settlement. Le Bire, 14 Wn.2d at 419.[9]

---

[9] Emphasis added.

11

Here, unlike in <u>Le Bire</u>, the relevant issue—the amount, if any, of Collins' delinquency before the Association applied the Settlement Payment—was not a definite issue before the court when it dismissed the 2016 Lawsuit. Instead, the court merely stated that Collins' account had been "settled" and dismissed the 2016 Lawsuit based on the stipulation of the parties. <u>Le Bire</u> does not control, and the Association does not meet its burden to persuade us that Collins is barred from challenging the "starting point" for the Association's accounting in the present lawsuit.

Appointment of Receiver

Collins contends the trial court erred by appointing a receiver over his unit. We disagree.

The Association moved for a receiver under several statutes, including RCW 64.34.364(10). RCW 64.34.364(10) provides that an association "shall be entitled" to the appointment of a receiver to collect rent from the lessee of a nonowner-occupied unit "[f]rom the time of commencement of an action by the association to foreclose a lien for nonpayment of delinquent assessments." It is undisputed that Collins does not live in his unit and that the Association moved for a receiver after it commenced this action to foreclose its lien. As a result, the entitlement under the statute applies. Collins advances no argument or authority to the contrary, instead relying on the same arguments he makes related to summary judgment. Thus, we affirm the order appointing a receiver.

Attorney Fee Award

The trial court awarded fees to the Association under RCW 64.34.364(14).

That statute provides, in relevant part:

> The association shall be entitled to recover any costs and reasonable attorneys' fees incurred in connection with the collection of delinquent assessments, whether or not such collection activities result in suit being commenced or prosecuted to judgment.

RCW 64.34.364(14). Collins does not challenge the statutory basis for the fee award. But he contends that the amount of the award was not reasonable because it included fees for a summary judgment motion on which the Association should not have prevailed. We agree.

We review the reasonableness of a fee award for abuse of discretion. 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 734, 281 P.3d 693 (2012). Here, the trial court awarded the Association attorney fees and costs totaling $36,337.48, the full amount requested by the Association. In doing so, the trial court expressly recognized that it must discount hours spent on " 'unsuccessful claims, duplicated effort, or otherwise unproductive time.' " 224 Westlake, 169 Wn. App. at 734-35 (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)). In other words, it is apparent the trial court considered the Association's ultimate success on summary judgment in awarding the Association its fees.

We cannot know what part of the fees the Association incurred that the trial court would have deemed reasonable had the Association not prevailed on summary judgment. Accordingly, we vacate the trial court's fee award without prejudice to the Association's ability to renew its request for fees on remand.

<u>Fees on Appeal</u>

Both parties request fees on appeal. Under RAP 18.1(b), a party "must devote a section of its opening brief to the request for the fees." The rule "requires argument and citation to authority to advise us of the appropriate grounds for an award of attorney fees." <u>Osborne v. Seymour</u>, 164 Wn. App. 820, 866, 265 P.3d 917 (2011). Compliance with RAP 18.1(b) is mandatory and requires "more than a bald request for attorney fees on appeal." <u>Osborne</u>, 164 Wn. App. at 866.

Collins requests fees in a single sentence at the end of his opening brief in which he simply asks us to "award him attorney fees expended in this appeal." He provides neither argument nor authority to support such an award.[10] We deny Collins' request for fees on appeal based on his failure to comply with RAP 18.1(b).

The Association requests fees under RCW 64.34.364(14), which authorizes an award of fees to an association "if it prevails on appeal and in the enforcement of a judgment." Because the Association is not the prevailing party, we decline to award it fees on appeal.

---

[10] Collins tried to remedy these shortcomings in his reply brief. But a legal theory raised for the first time in a reply brief comes too late to warrant consideration. <u>See</u> RAP 10.3(a)(6) (requiring appellant's opening brief to include argument and authority in support of the issues presented for review); <u>Duncan v. Alaska USA Fed. Credit Union</u>, 148 Wn. App. 52, 72, 199 P.3d 991 (2008) ("Arguments first raised in a reply are generally not addressed.").

We affirm the order appointing the receiver, reverse the order granting summary judgment, vacate the orders awarding the Association its attorney fees and costs, and remand for further proceedings.

Brennan, J.

WE CONCUR: